**O**

# United States District Court
# Central District of California

| | |
|---|---|
| MICROSOFT CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BH TECH, INC. and DOES 1–5, inclusive,<br><br>　　　　Defendants. | Case No. 2:16-cv-2664-ODW-RAO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [26]** |

## I. INTRODUCTION

On April 19, 2016, Plaintiff Microsoft Corporation ("Microsoft") filed suit against Defendant BH Tech, Inc. ("BH Tech") for copyright infringement, trademark infringement, false designation of origin, false description and representation, and unfair competition. (Complaint ("Compl.") ¶¶ 20–66, ECF No. 1.) After BH Tech failed to answer or otherwise respond to the Complaint, Microsoft requested that the Clerk enter a judgment in its favor. (ECF No. 22.) Microsoft then filed the present Motion for Default Judgment against BH Tech on June 17, 2016. (ECF No. 26.) For the reasons discussed below, the Court accepts the allegations in Microsoft's Complaint as true and **GRANTS** Microsoft's Motion for Default Judgment.[1]

## II. FACTUAL BACKGROUND

Microsoft "develops, licenses, and distributes computer software programs such as Microsoft Office Home and Business 2010" ("Office 2010") on recorded discs, via download, or pre-installed on certain devices. (Compl. ¶¶ 1, 9–10.) Accompanying Microsoft's software are other associated proprietary materials such as "user's guides, user's manuals, end user license agreements, Certificates of Authenticity, product keys," and other components. (*Id.*) Microsoft holds valid copyrights and trademarks for its software—including Office 2010—that are registered with the United States Copyright Office and the United States Patent and Trademark Office. (*Id.* ¶¶ 10, 11; Compl. Exs. 1–6, 7–18, ECF No. 2.)

Defendant BH Tech owns the registered domain for the internet website cotechin.com. (*Id.* ¶ 8; Mori Decl., Ex. A, ECF No. 26-9.) Through cotechin.com, BH Tech sells and distributes computers and computer software. (Mori Decl., Ex. A.) On the website, BH Tech advertises Microsoft software, including Office 2010. (Compl. ¶¶ 8, 13; Mori Decl. ¶ 2, Ex. A; Ventura Decl. ¶¶ 9a, 11a, Exs. A, D, ECF

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7–15.

No. 26-2.) Microsoft claims that it has not authorized BH Tech to sell and distribute any of its proprietary software, such as Office 2010. (Compl. ¶ 12.)

In November 2015, a Microsoft investigator placed an order for a downloadable copy of Office 2010, as advertised on cotechin.com for $39.00. (Fuller Decl. ¶¶ 2–3, Exs. B–C, ECF No. 26-4.) BH Tech sold the unauthorized download copy of Office 2010 to the Microsoft investigator. (Compl. ¶ 14; Fuller Decl. ¶¶ 2–3, Ex. C.) On February 4, 2016, Microsoft sent BH Tech a cease and desist letter via e-mail and postal mail, ordering BH Tech to stop selling unauthorized copies of Microsoft Office. (Compl. ¶ 15; Ventura Decl. ¶ 10, Ex. B.) BH Tech responded to the e-mail on February 4, 2016, stating that the company was "a Microsoft reseller, check your database." (Ventura Decl. ¶ 10, Ex. C). On February 8, 2016, a Microsoft representative called the phone number listed on cotechin.com. (Moyer Decl. ¶ 2, ECF No. 26-8.) David Johnston answered and identified himself as the manager of BH Tech. (*Id*.) The Microsoft representative told Johnston that BH Tech was not, in fact, authorized to distribute Microsoft software, and Johnston replied that he understood and that BH Tech had already stopped selling Microsoft software. (*Id*. ¶ 2, 5.)

However, BH Tech sold another unauthorized downloadable copy of Office 2010 to a different Microsoft investigator for $29.99 on February 11, 2016. (Compl. ¶ 16; Chow Decl. ¶¶ 2–4, Ex. D, ECF No. 26-6; Ventura Decl. ¶ 11.) After the initial keys to the download did not activate the purchased software, BH Tech requested that the customer/investigator initiate an online chat on cotechin.com, where BH Tech provided the Microsoft investigator with a phone number to call for assistance to activate the software. (Chow Decl. ¶¶ 5–7.) The investigator called provided number and again a man identifying himself as David Johnston answered; he gave the Microsoft investigator instructions on how to activate the software. (*Id*. ¶ 7 Ex. A; Moyer Decl. ¶ 2.) Johnston also sent the Microsoft investigator an e-mail that detailed how he could make a copy of the software and generate and distribute his own

personal key to access an unauthorized version of Office 2010. (Ventura Decl. ¶ 11b, Ex. D.)

On April 19, 2016, Microsoft filed this action against Defendants, alleging claims for: (1) copyright infringement; (2) federal trademark infringement; (3) false designation of origin, false description and false representation; and (4) common law unfair competition. (Compl. ¶¶ 20–66.) On April 21, 2016, Microsoft served BH Tech's registered agent with the summons and Complaint, and Johnston then contacted Microsoft's counsel to confirm that BH Tech had received the Complaint. (ECF No. 16; Mori Decl. ¶ 5.) BH Tech failed to answer by the May 12, 2016 deadline, and the court clerk entered a default judgment against BH Tech on May 19, 2016. (ECF No. 23.)

Microsoft moved for default judgment on July 25, 2016. (ECF No. 26.) Microsoft seeks $450,000 in statutory damages, $12,600 in attorneys' fees, and a permanent injunction to prevent BH Tech from further engaging in copyright and trademark infringement. (Mot. 4.) The Motion for Default Judgment now stands for decision.

### III. LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55(a), as well as Local Rule 55-1. Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against whom default was entered; (2) identification of the pleading entering default; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Federal Rules of Civil Procedure 55(b)(2) authorizes a district court discretion to grant default judgment after the Clerk enters default under Rule 55(a). *Aldabe v.*

*Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When moving for a default judgment, the well-pleaded factual allegations in the complaint are accepted as true, with the exception that allegations as to the amount of damages must be proved. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 54(c) ("[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]").

In exercising its discretion, the Court considers the *Eitel* factors: (1) the possibility of prejudice to Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether Defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

### A. Procedural Requirements

Microsoft has satisfied the procedural requirements under Federal Rules of Civil Procedure 54(c), 55(a), and Local Rule 55-1. The Clerk of the Court entered default against Defendant BH Tech on May 19, 2016. (ECF No. 23.) BH Tech is not a minor or infant, incompetent person, in military service, or otherwise exempted under the Servicemembers Civil Relief Act (50 U.S.C. App. §§ 501-597). (Mori Decl. ¶ 8.) Microsoft served BH Tech with a notice of the Motion for Default Judgment on June 17, 2016. (Moyer Decl., Ex. B.) Finally, Microsoft complied with Federal Rules of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint. (Compl. ¶¶ 39–41; Mot. 4.) Microsoft has thus met the procedural prerequisites for entry of default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 are met where plaintiffs address each

1 required factor in their application for default judgment).

## B. *Eitel* Factors

The Court finds that the *Eitel* factors weigh in favor of default judgment for the reasons discussed below.

### 1. Factor 1: Possibility of Prejudice to Microsoft

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. 782 F.2d at 1177. Here, BH Tech failed to appear and defend against Microsoft's allegations. Absent entry of default judgment, Microsoft is without recourse given BH Tech's unwillingness to cooperate and defend. Because Microsoft will suffer prejudice in the absence of a default judgment, this factor weighs in favor of default.

### 2. Factors 2 and 3: The Sufficiency of the Complaint and the Merits of Microsoft's Substantive Claims

The second and third factors, which look to the merits of Microsoft's substantive claims and the sufficiency of the Complaint, also support entry of default judgment. Microsoft's well-pleaded Complaint asserts four claims against BH Tech: (1) copyright infringement; (2) trademark infringement; (3) false designation of origin false description, and false representation; and (4) common law unfair competition.[2] (Compl. ¶¶ 39–41.)

### i. Microsoft's Copyright Claim

Microsoft alleges claims for direct copyright infringement, vicarious infringement, and contributory infringement due to BH Tech's unauthorized sale of Office 2010. (Compl. ¶¶ 20–28.) Each claim against BH Tech requires Microsoft to prove that it owns a valid copyright. *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (finding no vicarious or contributory infringement

---

[2] Microsoft's Complaint also asserts a claim for unjust enrichment, though it does not move for default on that claim here. (See CITE to Complaint.) Accordingly, the Court will address only the causes of action listed in both the pleadings and the instant motion.

without proof of direct infringement of plaintiff's copyright). As an initial matter, the Court notes that Microsoft owns the registered copyrights and trademarks for its software through the United States Copyright Office and the United States Patent and Trademark Office. (Compl. ¶¶ 1, 9–10, Exs. 1–18.)

A party willfully infringes upon a copyright when the factual allegations in the complaint demonstrate that the infringing party knew about the infringing conduct but continued to infringe. *See Philip Morris USA, Inc. v. Castworld Prods.*, *Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003). Here, Microsoft sent BH Tech a cease and desist letter via e-mail and the postal service, requesting that BH Tech stop its unauthorized sale of Office 2010. (Compl. ¶ 15.) While BH Tech's owner and manager, Johnston, assured Microsoft that he had stopped selling or distributing Office 2010 through cotechin.com, just one week later BH Tech sold another unauthorized copy of Office 2010 to a different Microsoft investigator. (Compl. ¶ 16; Moyer Decl. ¶ 5; Chow Decl. ¶¶ 2–4, Ex. D; Ventura Decl. ¶ 11.) Taking Microsoft's claims as true, BH Tech willfully infringed upon Microsoft's copyright despite Microsoft's multiple warnings. Thus, this Court finds that Microsoft has sufficiently pled its direct infringement claims.

A party is contributorily liable for copyright infringement when that party causes or materially contributes to known infringing conduct of another. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). A party is vicariously liable for a copyright infringement when that party has both the ability to supervise the infringing activity and a direct financial interest in the infringement. *Id.* Here, Microsoft has sufficiently pled that BH Tech should be held contributorily and vicariously liable because BH Tech provided customers with a how-to-guide to create and distribute authorization codes for Microsoft Office 2010. (Ventura Decl. ¶ 11b, Ex. D.) Furthermore, BH Tech has a direct financial interest in the infringement; by selling Microsoft's products through its website cotechin.com, BH Tech continues to

profit off the unauthorized sale of Microsoft products. Thus, the second and third *Eitel* factors are met as to these claims.

### ii. Microsoft's Trademark, False Designation of Origin, False Description and Representation, and Unfair Competition Claims

Claims two through four are premised on alleged trademark infringement and rely on the same course of conduct. (Compl. ¶¶ 29–53.) A defendant infringes on a trademark when, without the consent of the registered trademark holder, it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on claims for false designation of origin, false description, and false representation under section 43 of the Lanham Act (which addresses federal trademark law), a plaintiff must show that a defendant uses a word, term, name, symbol, device, or false designation of origin in commerce in connection with goods or services, and that such use "is likely to cause confusion or . . . mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

Infringement claims brought under 15 U.S.C. §§ 1114 and 1125 are subject to the same test: "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted). To find a "likelihood of confusion," neither actual confusion nor intent is necessary. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1998).

Similarly, an unfair competition claim under Cal. Bus. & Prof. Code § 17200[3] and state common law uses the "likelihood of confusion" test. *See Dreamworks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 n.2 (9th Cir. 1998) (explaining that "under both the Lanham Act and state common law . . . the claims [are treated] as coextensive."); *see also M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1089–90 (9th Cir. 2005) (state law claims for unfair competition under California common law and Cal. Bus. & Prof. Code § 17200 are "substantially congruent to claims made under the Lanham Act") (internal quotation marks omitted); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1080 (C.D. Cal. 2012) (holding, in part, that Plaintiff was "entitled to entry of default on its trademark infringement, false designation of origin, and state statutory and common law unfair competition claims" because Defendants used marks to with the intent to "cause consumers to believe that Defendants'" services were associated with Plaintiff).

Here, Microsoft is the exclusive owner of several registered trademarks, including Office 2010. (Compl. ¶¶ 12–13, 17, 25, 31, 38, 41, 46, Exs. 7–18.) BH Tech sold and distributed Microsoft's Office 2010 without Microsoft's authorization. (*Id.* ¶¶ 13–16; Chow Decl. ¶¶ 2–5, Ex. A; Fuller Decl. ¶¶ 2–4, Ex. A; Ventura Decl. ¶¶ 9a–9d, Ex. A.) Furthermore, BH Tech continued the unauthorized sale and distribution of Microsoft software after acknowledging receipt of Microsoft's cease and desist letter. (Compl. ¶ 16; Chow Decl. ¶¶ 2–4, Ex. D; Ventura Decl. ¶ 11.) The Court also takes as true Microsoft's contention that BH Tech's systematic and prolific use of its trademarks will likely cause consumer confusion, regardless of BH Tech's intent. (Compl. ¶ 33.) If reasonable consumers see Office 2010 offered on BH Tech's website, they would likely presume that BH Tech's products come with the same standard of service, care, and quality of authorized Microsoft software dealers. Thus, the Court finds that Microsoft has sufficiently pled violations under the Lanham Act,

---

[3] Cal. Bus. & Prof. Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

false designation of origin, false description and representation, and common law unfair competition. Thus, *Eitel* factors two and three weigh in favor of Microsoft.

### 3. Factor 4: Amount of Money At Stake

*Eitel*'s fourth factor evaluates the sum of money at stake. *Forever 21, Inc. v. Nat'l Stores Inc.*, No. 12-CV-10807-ODW, 2014 WL 3898729, at *4 (C.D. Cal. Aug. 11, 2014). This factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). While the Court accepts the allegations in the Complaint as true for purposes of default judgment, courts must make specific findings of fact in assessing the amount of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

Here, Microsoft alleges both copyright and trademark law violations, and damages for both are calculated under the corresponding statutory scheme. Under the Copyright Act, the Court may award fees upwards of $150,000 per infringement, 17 U.S.C. § 504(c), while the Lanham Act provides that the Court may award upwards of $200,000 per infringement and $2,000,000 for each willful infringement. 15 U.S.C. § 1117(c). Costs and attorneys' fees are also awardable under the Lanham Act. *Id.*

Microsoft seeks $90,000 under the Copyright Act, $360,000 under the Lanham Act, and $12,600 in attorneys' fees and costs, totaling $462,600. Given that the awards are available under the applicable law, Microsoft's damages are both conservative and reasonably calculated. Accordingly, this factor weighs in favor of default judgment.

### 4. Factor 5: Possibility of a Dispute Concerning Material Facts

The next *Eitel* factor considers the possibility that material facts are in dispute. *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471–72. As discussed above, Microsoft has adequately alleged the facts necessary to establish the claims in its Complaint, and there can be no reasonable dispute where BH Tech has not challenged the validity of Microsoft's allegations. Thus, with no information to contradict

Microsoft's factual allegations, the Court sees no dispute of material fact and accordingly finds this factor weighing in favor of default.

### 5. Factors 6 and 7: Remaining Factors

The sixth *Eitel* factor considers whether BH Tech's default was the result of excusable neglect. Microsoft provided BH Tech with proper service, notice of the litigation, and afforded BH Tech an opportunity to address this matter out of court. (ECF Nos.10–11, 16, 19, 21, 24, 26; Mot. 1–4.) Yet BH Tech still chose not to respond to the Complaint or make an appearance. (Mot. 1–4.) Since there is no indication of excusable neglect, the sixth *Eitel* factor favors default judgment.

Lastly, the *Eitel* Court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Thus, because BH Tech failed to appear and defend, the Court finds that, along with all of the other factors, the seventh and final *Eitel* factor weighs in favor of granting default judgment.

## C. Remedies

Microsoft requests statutory damages, attorneys' fees and costs, and a permanent injunction. (Compl. ¶¶ 39–41; Mot. 1.) The relief sought is consistent with the relief requested in the Complaint. (*Id.*) Considering Microsoft's briefing and the present motion, the Court finds that Microsoft is entitled to the relief sought.

### 1. Statutory Relief

A plaintiff is entitled to separate statutory damages under both the Copyright Act and the Lanham Act. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) ("in order to effectuate the purposes of both statutes, damages may be awarded under both."). Under the Copyright Act, a copyright infringer is liable for either statutory damages or "actual damages and any additional

11

profits of the infringer." 17 U.S.C. § 504(a). Since it is difficult to prove actual damages in a default judgment due to the defendant's absence in the proceeding, statutory damages are appropriate. *See Live Face on Web, LLC v. AZ Metroway, Inc.*, No. CV-01701CAS-KKx, 2016 WL 4402796, at *6 (C.D. Cal. Aug. 15, 2016) (citing *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101–02 (N.D. Cal. 2003). Statutory damages under the Lanham Act must still be equitable and reasonably calculated to serve the statutory purpose. *See Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1203 (C.D. Cal. 2012) (holding, in part, that a total award upon a default judgment of $60,000 was reasonable where an award of $20,000 per counterfeit mark was "conservative in light of the statutory maximum of $200,000 per counterfeit mark or up to $2,000,000 per counterfeit mark" if the infringement was willful); *see also Philip Morris USA, Inc.*, 219 F.R.D. at 501 (holding, in part, that even though the plaintiff must "prove up" damages, it is still within the Court's discretion to authorize the maximum amount of statutory damages when the infringement is found to be willful).

Microsoft seeks statutory damages under both the Copyright Act, 17 U.S.C. § 504(c), and the Lanham Act, 15 U.S.C. § 1117(c). (Compl. ¶¶ 39–41; Mot. 2.) Microsoft alleges that BH Tech infringed on twelve trademarks and seeks $30,000 per trademark infringement, though the Lanham Act authorizes statutory damages of up to $200,000 per trademark infringement and $2,000,000 for willful trademark infringement. (Compl. ¶ 66b, 39; Mot. 10–12.) Additionally, Microsoft seeks $15,000 for six copyright infringements under 17 U.S.C. § 504(c), which provides upwards of $30,000 per copyright infringement and $150,000 for each willful copyright infringement. (*Id.*) In total, Microsoft seeks $450,000 in statutory damages. (*Id.*) Notably, Microsoft is not seeking the statutorily available maximum awards. Instead, it asks for a conservative $30,000 per trademark infringement and $15,000 per copyright infringement. (Compl. ¶ 39; Mot. 10–13.) The Court finds

these sums to be reasonably calculated and thus grants Microsoft's request for statutory damages.

### 2. Attorneys' Fees and Costs

Additionally, Microsoft seeks attorneys' fees and costs. (Mot. 15–16; Compl. ¶ 41.) Under the Lanham Act, attorneys' fees are appropriate in "exceptional cases." 15 U.S.C. § 1117(a). "A trademark infringement is viewed as 'exceptional' under § 1117(a) when the infringement is malicious, fraudulent, deliberate or willful." *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 711 (9th Cir. 1999). A court may also consider the failure to defend an action in determining whether the conduct was willful for purposes of attorneys' fees. *See, e.g.*, *Taylor Made Golf Co. v. Cartsen Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("[A] case may be considered 'exceptional' where the defendant disregards the proceedings and does not appear").

Here, the Court finds BH Tech's infringement willful and fraudulent. After receiving a cease and desist letter from Microsoft, BH Tech fraudulently responded that they were "a Microsoft reseller, check your database." (Compl. ¶ 15; Ventura Decl. ¶ 10, Ex. B–C.) Shortly afterward, a Microsoft representative informed Johnston—BH Tech's owner and manager—that BH Tech was not, in fact, authorized to distribute Microsoft software. (Moyer Decl., ¶ 2, 5.) Though Johnston acknowledged Microsoft's admonition and insisted that BH Tech had stopped selling Microsoft software, only a week later BH Tech sold a copy of Office 2010 to another Microsoft investigator. (Compl. ¶ 16; Chow Decl. ¶¶ 2-4, Ex. D; Ventura Decl. ¶ 11.) This knowing disregard for Microsoft's trademark constitutes willful and fraudulent behavior. Moreover, BH Tech's failure to respond to Microsoft's Complaint and subsequent notice of default judgment demonstrates that BH Tech's infringement is exceptional. Thus, this Court finds attorneys' fees and costs appropriate in this matter.

//

//

### 3. Permanent Injunctive Relief

Finally, Microsoft seeks to permanently enjoin BH Tech from engaging in any further copyright infringement, trademark infringement, false designation, and unfair competition in connection with their sale and distribution of unauthorized Microsoft software. (Compl. ¶ 40; Mot. 2.) The Lanham Act gives the Court "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [the Lanham Act]." 15 U.S.C. § 1116(a). Additionally, the Copyright Act permits the Court to permanently enjoin a defendant from further copyright infringement so long as the plaintiff provides sufficient evidence to justify an injunction. *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1139 (D. Colo. 2014) (finding that an order directing Defendant to destroy all copies of copyrighted work from a computer in his possession "is a reasonable request and should be granted," so long as Plaintiff provides sufficient evidence that Defendant possessed copyrighted work).

For the Court to grant a permanent injunction, Microsoft must demonstrate that: (1) it has suffered irreparable injury; (2) the remedies available at law are inadequate; (3) a remedy in equity is warranted, considering the hardships imposed on the parties; and (4) a permanent injunction would not be contrary to the public interest. *See Reno Air Racing Assn v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). First, Microsoft has demonstrated that permanent injunctive relief is warranted. A plaintiff's loss of control over its business reputation due to a defendant's unauthorized use of its protected mark during the pendency of an infringement action constitutes irreparable harm. *See Kalologie Franchising LLC v. Kalologie Skinare Med'l Group of Cal.*, No. CV-14-00016 DDP VBKX, 2014 WL 953442, at *5 (C.D. Cal. Mar. 11, 2014). Here, BH Tech advertised, sold, and distributed Microsoft's software without Microsoft's authorization—thus infringing on Microsoft's trademarks and copyrights. (Compl. ¶¶

13–15.) Second, merely granting statutory damages will not prevent BH Tech from continuing to sell unauthorized Microsoft software causing further irreparable harm. *See Sennheiser Elec. Corp. v. Eichler*, No. CV-12-10809 MMM PLAX, 2013 WL 3811775, at *10 (C.D. Cal Jul. 19, 2013). (Compl. ¶ 16; Chow Decl. ¶¶ 2–4, Ex. D; Moyer Decl., ¶¶ 2, 5; Ventura Decl. ¶ 11, ECF Nos. 10, 11, 16, 19, 21, 24, 26.) Because BH Tech's failure to appear also suggests they will continue to infringe on Microsoft's copyrights and trademarks without judicial intervention, the potential for future harm to Microsoft remains. Third, a monetary award will not fully remedy Microsoft's harm because BH Tech's continued infringement will cause Microsoft undue hardship. *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV-14-2307 RSWL FFMX, 2014 WL 4679001, at *13 (C.D. Cal. Sept. 18, 2014) (holding "Plaintiff's injury will not be fully remedied by a monetary award because Defendants will continue their infringing activity if not enjoined by the Court."). Lastly, there is greater public interest in protecting the rights of copyright and trademark owners than in allowing an infringer to continue using the trademarked and copyrighted materials. "In trademark cases, the public interest is the public's right not to be deceived or confused." *Warner Bros. Entm't, Inc. v. The Global Asylum, Inc.*, No. CV-12-9547 PSG CWX, 2012 WL 6951315, at *23 (C.D. Cal. Dec. 10, 2012). Here, a permanent injunction favors the public interest because it will prevent consumer confusion. Thus, the Court orders that BH Tech be permanently enjoined from further exploitation of Microsoft's registered marks and copyrights.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Microsoft's Motion for Entry of Default Judgment. (ECF No. 26.) It is **FURTHER ORDERED** that BH Tech is directed to:

    A. Within thirty (30) days of entry of this judgment, file and serve upon Microsoft a sworn statement setting forth in detail the manner and form in

1  which they have complied with the terms of this injunction pursuant to 15 U.S.C. § 1116(a); and

B. In accordance with Section 36 of the Federal Trademark Act, 15 U.S.C. § 1118, deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising and promotional matter, electronic files, and other materials in the possession or control of defendants bearing Microsoft's logo.

C. In accordance with 17 U.S.C. § 504(c)(2) for infringing on Microsoft's copyrights TX 7-151-840; TX 7-218-085; TX 7-206-464; TX 7-206-501; TX 7-219-973; and TX 7-206-498, BH Tech is ordered to pay Microsoft $15,000 for each copyright infringement for a total of $90,000.

D. In accordance with the Lanham Act, 15 U.S.C. § 1117(c), for infringing on Microsoft's trademarks 2,942,050; 3,905,558; 1,200,236; 3,625,391; 4,029,299; 2,844,710; 3,905,559; 2,188,125; 3,905,560; 1,475,795; 3,905,561; and 3,909,143, BH Tech is ordered to pay Microsoft $30,000 for each trademark infringement for a total of $360,000.

E. In accordance with 15 U.S.C. § 1117(a), BH Tech is ordered to pay Microsoft's attorneys' fees and costs of $12,600.

F. The monetary judgments shall accrue interest, compounded annually, pursuant to 28 U.S.C. § 1961.

**IT IS SO ORDERED.**

September 2, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**